IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TORATIO DEVAL WILLIAMS, | : |
| Plaintiff | : |
| vs. | : CIVIL NO. 1:CV-13-3000 |
| | : (Judge Caldwell) |
| OFC. ADMIRE, *et al.*, | : |
| Defendants | : |

*M E M O R A N D U M*

I.   *Introduction*

Toratio Deval Williams, a federal inmate, filed this civil-rights action concerning a series of events that occurred in 2013 while he was housed at the United States Prison in Lewisburg, Pennsylvania.[1]  Williams alleges that defendants frequently searched his cell and confiscated legal materials and personal property; interfered with his access to the courts; physically assaulted him on three occasions; denied him medical care for his injuries; called him racially charged names; tampered with his food; and issued him false incident reports to cover up their inappropriate use of force against him.  Named as defendants are the following Bureau of Prisons (BOP) USP Lewisburg employees: Correctional Officer (CO) Robert Admire; CO Sergio Argueta; CO Thomas Benedict; CO Jason Carpenter; CO Timothy Crawford; CO Ty Crawley;  Paramedic Sarah Dees; Correctional Counselor James Diltz; Lieutenant (Lt.) Daniel Dowkus; Lt. Keith Ferguson; CO Brittany Garman; CO Joseph Hodish; CO Chad Hurley; Disciplinary Hearing Officer

---

[1] Williams presently resides in Summerville, South Carolina and is not incarcerated.

(DHO) Angelo Jordan; CO Michael Kemmerer; Phlebotomist Kimberly Lindsey; Lt. Roger Miller; CO Brandon Mottern; CO Joshua Oldt; Lt. Shannon Prutzman; Lt. Jerame Sherman; CO Tara Stackhouse; CO Brian Wertz; and Associate Warden David Wilson.  (Doc. 1, Compl.)

Presently before the court is the Defendants' motion to dismiss and motion for summary judgment.  (Doc. 15, Mot. to Dismiss and Mot. For Summ. J.)  The motion is properly supported with a statement of undisputed material facts, brief, and exhibits.  (*See* Docs. 32 and 33).  In addition to seeking dismissal of the Complaint on the basis of Williams' alleged failure to exhaust his administrative remedies, Defendants attack the merits of each of Williams' claims.  Williams filed a "Declaration in Opposition to [Defendants'] Motion."  (*See* Doc. 36, Br. in Opp'n Mot. Summ. J.).  He did not file a response to Defendants' statement of undisputed facts.[2]  However, Williams suggests the Regional Director improperly rejected his administrative remedies due to bias.  In their reply, Defendants point out that when given the opportunity to correct or re-file his administrative remedies that were rejected by the Regional Director, Williams failed to do so.  (*See* Doc. 38).

As the issue of Williams' exhaustion of administrative remedies is dispositive of Defendants' motion, the court need not address the remaining defenses presented.  For

---

[2] Because Williams failed to file a Statement of Material Facts in response to Defendants' submission, the facts as set forth in Defendants' statement will be deemed admitted pursuant to M.D. Pa. Local Rule 56.1.  *See Smith v. Addy*, 343 F. App'x 806, 808 (3d Cir. 2009) (District Court entitled to deem Defendants' statement of facts as admitted due to Plaintiff's failure to file a counter-statement of material facts).

the reasons that follow, the defendants' motion for summary judgment is granted because Williams has failed to exhaust his administrative remedies with regard to any of the claims presented in his Complaint.

II.     *Standard of Review*

Because the court will consider matters outside of the pleadings, Defendants' motion will be treated as one for summary judgment.

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this evaluation, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party.'" *Roth v. Norfalco*, 651 F.3d 367, 373 (3d Cir. 2011)(citing *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)).

"[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Liberty Lobby*, 477 U.S. at 256-57, 106 S.Ct. at 2514. Allegations made without evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

III.   *Background*

    A.   *Allegations of the Complaint*

The allegations of the Complaint consist of several distinct events that occurred in 2013 while Williams was incarcerated at USP Lewisburg. (Doc. 1, Compl.)

Williams claims Defendants Admire, Mottern, Garman and Ferguson searched his cell on July 8, 2013, and threw away some of his legal documents. (*Id.*, ECF p. 2).

On July 12, 2013, Williams alleges Defendant Garman lied when she said that Plaintiff masturbated in front of her. Garman did not issue Williams an incident report but she did call him a "monkey." (*Id.*, ECF p. 3).

Williams alleges his cell was searched again on July 21, 2013, this time by Defendants Benedict, Admire and Mottern. He claims they confiscated legal materials and personal property without issuing him the required confiscation form. (*Id.*)

-4-

On September 10, 2013, Defendants Ferguson, Hurley, Stackhouse, Miller and Paramedic Dees came to his cell and told him "to pack up." (*Id.*, ECF p. 7). Williams told his cellmate "don't go to the door they might spray gas in the cell." (*Id.*) Williams told the officers that they should not use mace on him because he has breathing problems. Lt. Ferguson then sprayed "2 big bottles of mace" into Williams' cell. (*Id.*) Williams then began to scream that he could not breathe. Although present, the "nurse" did not assess his breathing. The defendants present were yelling "just die just die nigger." (*Id.*) Defendant Hurley later issued Williams a false incident report for assaulting his cellmate. (*Id.*)

Later that day while Defendant Argueta was escorting Williams from I-block to G-block he assaulted Wiliams. (*Id.*) Argueta then told Oldt to "hit the devices to call other staff." (*Id.*) Defendants Crawford, Carpenter, Kmmerer Prutzman and Wert responded and joined in on the assault. Defendant Crawford is alleged to have made racially derogatory remarks. Lt. Dawkus and Associate Warden Wilson stood by and watched the defendants beat Williams for "ten minutes." (*Id.*) Following this assault Williams was placed in "restraints and the black box." (*Id.*, ECF p. 8). The restraints were applied so tight that he has permanent scarring on his wrists. The "medical staff" present disagreed with Williams saying the restraints were not too tight. (*Id.*) Lt. Dowkus knew the cuffs were too tight but told Williams "that's not my job to loosen them it's the P.A. / med techs." (*Id.*) Defendant Wilson told Williams "to take that like a man." (*Id.*) Williams remained "in the black box" for three days, September 10-13, 2013. (*Id.*)

On October 12, 19 and 26, 2013, Defendants Crawley and Hodish spit in Williams food tray. Defendant Hodish also took a piece of bread from Williams' tray, took a

bite and said "bon appetite, bitch." (*Id.*)  Williams says he spoke to Lt. Dawkus and A.W. Hotzapple (a non-defendant) about this incident. (*Id.*)

Williams also alleges that "Nurse Lindsey" issued him a false incident report because "the office" did not like him because they "read [his] case off the computer" which led to him getting "ruffed up by the staff." (*Id.*)

DHO Jordan is alleged to have falsified the outcome of two incident reports when he was found guilty of assaulting and resisting staff on January 4, 2013, and September 18, 2013. (*Id.*)  Williams claims that video footage from these events will exonerate him and reveal that he was issued the incident reports by unnamed staff to cover up their assaulting him.

Finally, Williams claims Counselor Diltz threw away his legal work to "cover for fellow officers." (*Id.*)  He claims that on September 24, 2013, he mailed a civil rights action which the federal court, the Lewisburg Prison project and his sentencing judge never received. (*Id.*)

B.  *Undisputed Facts Related to Williams' Exhaustion of BOP Administrative Remedies as to the Claims Presented in his Complaint.*

After a prisoner is required to attempt to resolve the issue informally, with staff, 28 C.F.R. § 542.13(a); DSMF ¶ 21, the BOP has a three-tiered administrative remedy process that must be completed.  This process allows a federal prisoner "to seek formal review of an issue relating to any aspect of his/her own confinement." *See* 28 C.F.R. § 542.10(a); Doc. 32, Defs.' Statement of Material Facts (DSMF), ¶ 20.  If the informal resolution is unsuccessful, the prisoner then files a formal administrative remedy at the

institution of confinement within twenty calendar days following the date on which the basis of the grievance occurred, except where the prisoner demonstrates a valid reason for delay.[3]  *See* 28 C.F.R. § 542.14(a), (b); DSMF ¶ 22.  The Warden has 20 calendar days to respond to the inmate's administrative remedy request.  *See* 28 C.F.R. § 542.18; DSMF ¶ 23.  An inmate dissatisfied with the Warden's response may file an appeal to the BOP Regional Director within 20 calendar days of the date the Warden signed the response.  *See* 28 C.F.R. § 542.15; DSMF ¶ 24.   As a last step, where the prisoner is not satisfied with the Regional Director's response, he or she may submit an appeal to the BOP's Central Office within 30 calendar days of the Regional Director's response.  *See* 28 C.F.R. § 542.15(a); DSMF ¶ 25.  No administrative remedy is considered fully exhausted until it has been considered and denied by the BOP Central Office.  DSMF ¶ 26.  If an administrative remedy is rejected at any level, it is returned to the inmate with a written notice explaining the reason for the rejection and if the defect on which the rejection is based is correctable, the inmate is advised to resubmit the request or appeal.  *See* 28

---

[3]
> Where an inmate demonstrates a valid reason for delay, an extension in filing time may be allowed.  In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame.  Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

28 C.F.R. § 542.14(b).

C.F.R. § 542.17; DSMF ¶ 27.  The BOP does not maintain copies of rejected administrative remedies.  DSMF ¶ 27.

> If an inmate reasonably believes the issue [being grieved] is "sensitive and the inmate's safety or well-being would be placed in danger if the [administrative remedy] Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director.  The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution.  If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted.  Otherwise, the Request will not be accepted and the inmate shall be advised in writing of that determination, without a return of the Request.  The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden.  The Warden shall allow a reasonable extension of time for such a resubmission.

28 C.F.R. § 542.14(d)(1).

As of the filing of Defendants' Summary Judgment materials, Williams had filed a total of 37 administrative remedies since his incarceration with the BOP.  DSMF ¶ 28.  The only administrative remedy request Williams fully exhausted while housed at USP Lewisburg concerned a request for halfway house placement.  DSMF ¶ 43.  A review of Williams' administrative remedies reveals that three of them possibly relate to the claims raised in his Complaint: Administrative Remedy (AR) No. 748027; AR No. 748451; and AR 759031.  DSMF ¶¶ 28 - 29, 33, and 39; *see also* Doc. 32-1, ECF pp. 63 - 66.

Williams filed AR No. 748027-R1 directly to the BOP's Regional Director on August 26, 2013, alleging that the subject matter, a complaint against a staff member, was sensitive in nature.  DSMF ¶¶ 29-30.  The Regional Director rejected the administrative remedy finding that it was not sufficiently sensitive and directed Williams to submit the

remedy at the institution level. DSMF ¶ 31. Williams' appeal of this response to the BOP's Central Office was similarly rejected. DSMF ¶ 32.

On September 3, 2013, Williams filed AR No. 748451-F1 at the institutional level alleging staff misconduct and racial discrimination. DSMF ¶ 33. The Warden rejected the administrative remedy as untimely, but noted that a copy of the remedy was forwarded to the appropriate office for review. DSMF ¶ 34. The Regional Director concurred with the institution's rejection of the administrative remedy as untimely. Williams appealed the Regional Director's response to the BOP's Central Office. DSMF ¶ 37. The appeal was rejected and Williams was advised "[y]ou will need to refile your grievance to the institution & also include staff memo stating reason for untimeliness with your resubmission." DSMF ¶ 38.

Williams filed AR No. 759031-R1 with the BOP Regional Deputy on November 22, 2013, alleging a complaint against staff. DSMF ¶ 39. Again, Williams alleged that the remedy was sensitive in nature. However, the Regional Director rejected it as sensitive and directed Williams to re-file his administrative remedy at the institution level. DSMF ¶ 40. Williams' appeal to the BOP Central Office was similarly rejected. DSMF ¶ 41.

IV.  *Discussion*

The Prison Litigation Reform Act (PLRA) requires that an inmate exhaust all available administrative remedies before he may maintain a suit in federal court:

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility under such administrative remedies as are available are exhausted.

-9-

42 U.S.C. § 1997e(a); *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," including civil-rights suits by federal prisoners.  *Porter v. Nussle*, 543 U.S. 516, 523, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002).  Under the PLRA, a prisoner must properly exhaust all available administrative remedies prior to filing suit.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 83-84, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006).  That is, "prisoners must complete the administrative review process in accordance with the applicable procedural rules — rules that are defined not by the PLRA, but by the prison grievance process itself."  *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 922, 166 L.Ed.2d 798 (2007)(internal citation and quotation marks omitted).  "Proper exhaustion demands compliance with the agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90-91, 126 S.Ct. at 2386;  *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  Further, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).  The Supreme Court has clearly stated that "there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 212, 127 S.C. at 918-19.

      A prisoner is not required to allege that administrative remedies have been exhausted.  *Jones*, 549 U.S. at 216, 127 S.Ct. at 921; *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).  Failure to exhaust available administrative remedies is an affirmative defense.  (*Id.*)

As such, it must be plead and proven by the Defendants.  *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

In their motion, Defendants present the affirmative defense that they are entitled to judgment as a matter of law with respect to all claims against all defendants due to Williams' failure to properly exhaust his available administrative remedies.  The evidence submitted by Defendants reveals that Williams has only properly exhausted one administrative remedy, on a topic unrelated to the issues presented in this case, during his tenure with the BOP.  While Defendants candidly point out the existence of three administrative remedies that could related to claims presented in this matter (complaint of staff misconduct and racial discrimination), these administrative remedies were not properly exhausted.  The two administrative remedies (AR Nos. 748027 and 759031) relating to unspecified "staff complaint[s]" were filed as "sensitive" by Williams, as permitted by the BOP's administrative remedy process.  However, although Williams argues the Regional Director's rejection of these remedies as non-sensitive was due to "bias," he does not dispute that BOP policy allows for such rejection or explain why he did not re-file his grievances at the institutional level as instructed.  Thus, to the extent either of those administrative remedies addressed issues of staff mistreatment or issues asserted in the Complaint, they are unexhausted.

The same is true with respect to Williams' administrative remedy concerning allegations of staff misconduct and racial discrimination (AR No. 748451).  The Warden rejected the administrative remedy as untimely filed.  Williams was advised to re-file at the institutional level with an explanation for his untimely original filing.  Again, Williams fails to explain any impediment or other reason as to why he never re-filed this administrative

-11-

remedy.  Even though Williams appealed the rejection of these grievances to final review at the BOP's Central Office, his exhaustion was not proper as it did not comply with the mandates of the BOP's administrative remedy process procedures.  Williams has not presented any evidence to challenge Defendants' facts related to his lack of proper exhaustion of claims presented in his Complaint or explain why he could not re-file the administrative remedies as directed.  Moreover, Williams does not dispute that he has only properly exhausted one administrative remedy which does not related to this case.  Williams has not presented any evidence to counter Defendants evidence that he failed to properly exhaust his available administrative remedies regarding his claims of assault, denial of medical care, destruction of legal materials, loss of personal property, food tampering or interference with his access to the courts.  Accordingly, the Defendants are entitled to summary judgment in their favor as to all claims set forth in the Complaint against them.

    An appropriate order follows.

                  /s/ William W. Caldwell
                  William W. Caldwell
                  United States District Judge

Date: March 9, 2015